DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Ben Kaminetzky
Darren S. Klein
Christopher S. Robertson
Joseph W. Brown

*Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Case No. 25-11897 (SHL) |
| SPIRIT AVIATION HOLDINGS, INC., et al.,<br><br>Plaintiff,<br><br>- against -<br><br>TERRANCE MLECZKO and TM DEFENSE SOLUTIONS LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Defendants. | Adversary Pro. No. _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF**

Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**," the "**Company**," or "**Spirit**"), each of which is a debtor and debtor in possession in

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

the Chapter 11 Cases, and Plaintiffs in the above-captioned adversary proceeding, allege as follows on knowledge as to itself, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This is an adversary proceeding brought pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and sections 362 and 105 of title 11 of the United States Code (the "**Bankruptcy Code**") to enjoin for the pendency of the above-captioned consolidated chapter 11 proceedings (the "**Chapter 11 Cases**") litigation of the putative federal securities class action (the "**Securities Action**") filed in the United States District Court for the Southern District of Florida, Case No. 25-cv-61959, by Terrance Mleczko and TM Defense Solutions LLC (together, "**Defendants**") against Spirit's current Chief Executive Officer ("**CEO**"), David "Dave" Davis, and current Chief Financial Officer ("**CFO**"), Frederick "Fred" Cromer (together, the "**Officer Defendants**").

2. Unless stayed, litigation of the Securities Action will thwart the Debtors' reorganization efforts and drain critically needed assets from their estates at a time when all of the Debtors' resources—including both financial resources and the time and attention of Spirit's management—are needed to navigate these fast-moving bankruptcy proceedings. This impact is further magnified by the fact that the allegations in the Securities Action relate exclusively to statements and representations made by and on behalf of Spirit, thus requiring Spirit to meaningfully participate in defending against the claims asserted. At a minimum, litigation of claims against Spirit's most senior officers will trigger Spirit's substantial indemnity obligations owed to those individuals.

3. The Bankruptcy Code provides for stays of litigation to avoid precisely this inequitable and value-destroying dynamic. In the wide range of situations to which it applies, the automatic stay provided by section 362(a) of the Code allows "the bankruptcy court to centralize

2

all disputes concerning property of the debtor's estate in bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990); *see also* 11 U.S.C. § 362(a). Section 105(a) of the Code similarly empowers this Court to stay actions that will frustrate a successful reorganization even if those actions are not automatically stayed by section 362—or if the application of section 362 is unclear or disputed.

4. The Debtors therefore respectfully request that the Court issue the requested injunction to the extent that the automatic stay should not otherwise be extended to enjoin the Securities Action. The standard for such an injunction is amply met here. First, the Debtors have a reasonable likelihood of a successful reorganization. The Debtors have already made great strides toward reorganization through a number of critical agreements with aircraft lessors and other commercial counterparties. In addition, the Debtors have secured hundreds of millions of dollars in debtor-in-possession ("**DIP**") financing from their secured lenders (the "**DIP Lenders**").

5. Second, absent a stay of the Securities Action, the Debtors—and their prospects of successful reorganization—will suffer imminent irreparable harm. Such litigation would divert the time and resources of the Debtors and their personnel away from advancing reorganization efforts, and trigger the Debtors' substantial indemnity obligations owed to the Officer Defendants. These consequences would cause the Debtors' estates to suffer adverse economic consequences that render the requested stay appropriate.

6. Third, on balance, the irreparable harm to the Debtors if the Securities Action proceeds outweighs the minor inconvenience imposed on the Defendants if prosecution of the Securities Action is temporarily delayed.

7. Fourth and finally, it is in the public interest to enjoin the Securities Action. As a leading value airline in an already struggling industry, Spirit's successful restructuring would benefit the market by preserving tens of thousands of jobs as well as flexible, affordable travel options for domestic airline travelers. Thus, it is in the paramount public interest to provide Spirit the breathing spell necessary to emerge from these Chapter 11 Cases and remain operational.

8. Because the equities weigh in favor of staying the Securities Action, a stay is warranted in the interest of justice, and this Court should grant the requested injunctive relief.

## JURISDICTION AND VENUE

9. This adversary proceeding arises in and relates to the Debtors' cases pending before this Court under chapter 11 of the Bankruptcy Code.

10. The Court has jurisdiction to consider this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012. This Court has subject-matter jurisdiction over the claims against the Related Parties pursuant to 28 U.S.C. §§ 157 and 1334.

11. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12. The Court also has "related to" jurisdiction over this adversary proceeding and jurisdiction to enjoin litigation of the Securities Action because the Action, unless stayed, "could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339 (2d Cir.

4

2018). The Debtors seek to extend the automatic stay to securities litigation brought against Spirit's Chief Executive Office and Chief Financial Officer. Such proceedings in search of damages would conceivably affect the estate.

13. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

14. The Debtors are entities engaged in the aviation industry that initiated consolidated chapter 11 bankruptcy proceedings on August 29, 2025. David Davis is the current Chief Executive Office of Spirit Aviation Holdings, Inc. and Frederick Cromer is the current Chief Financial Officer of Spirit Aviation Holdings, Inc.

15. Defendants Terrance Mleczko and TM Defense Solutions LLC are plaintiffs in the Securities Action. Upon information and belief, Mr. Mlecczko is a Managing Member at TM Defense Solutions. TM Defense Solutions LLC is a government contractor specializing in import and export procurement. As alleged in the Securities Complaint, Defendants purchased or otherwise acquired Spirit stock.

## FACTUAL BACKGROUND

**Pre-Petition Events & Bankruptcy Proceedings**

16. Spirit operates a leading value airline, which serves destinations throughout the United States, Latin America, and the Caribbean. As of the filing of the Debtors' petitions for bankruptcy (the "**Petition Date**"), Spirit employed approximately 25,000 direct employees and independent contractors. Spirit has a young, fuel-efficient fleet consisting entirely of single-aisle Airbus aircraft, known as "A320 family" aircraft.

17. In fall 2024, Spirit entered into pre-negotiated chapter 11 proceedings (the "**Prior Chapter 11 Cases**") due to large upcoming debt maturities and sector-wide macroeconomic headwinds. With nearly unanimous stakeholder support, Spirit emerged from bankruptcy on

5

March 12, 2025, as a newly incorporated Delaware corporation that equitized approximately $800 million of debt and added $350 million of new liquidity through an equity rights offering.

18. Pursuant to the terms of Spirit's amended and restated certificate of incorporation, the Company may "indemnify to the fullest extent permitted by law . . . any person made or threatened to be made a party to an action or proceeding . . . by reason of the fact that the person is or was a[n] [ ] officer . . . of the Corporation." Likewise, Spirit's amended and restated bylaws direct that Spirit "shall indemnify and hold harmless" each officer made a party to a civil proceeding "by reason of that fact that [he or she] . . . was a[n] [ ] officer . . . to the fullest extent permitted by applicable law . . . against all expense, liability, and loss (including attorneys' fees, judgments, fines [ ] and amounts paid or to be paid in settlement) actually and reasonably incurred."

19. The industry-wide pressures that preceded and led to the Prior Chapter 11 Cases worsened following Spirit's emergence in March 2025. After the COVID-19 pandemic, the domestic airline sector experienced excess capacity and low passenger demand, especially from the price-sensitive passengers that make up Spirit's customer base. These pressures were particularly acute for Spirit due to the actions of other airlines in the low-cost/value sector.

20. At the same time, domestic "Legacy" carriers, such as American Airlines, Delta Air Lines, and United Airlines, began competing for Spirit's core consumer base. While many other domestic airlines have reported weakened revenues and low or negative margins, Spirit's challenges have been particularly acute due to the combination of adverse industry-wide conditions and the disruptive actions of its competitors. It was against the backdrop of these external pressures that certain actions taken by Spirit's counterparties in August 2025 occurred, precipitating the filing of the instant Chapter 11 Cases.

21. Spirit entered into a purchase agreement with Airbus S.A.S. ("**Airbus**") in December 2019 for the purchase of 100 new Airbus A320neo family aircraft, with aircraft scheduled to be delivered through 2031. Subsequently, on July 30, 2024, Spirit entered into direct lease transactions for 36 of those Airbus aircraft with AerCap Holdings N.V. (together with its affiliates, "**AerCap**")—its largest source of leased aircraft. On August 25, 2025, AerCap unexpectedly sent Spirit a notice of termination of the committed lease agreements for the 36 Airbus aircraft, and a notice of default for 37 leases of existing aircraft in Spirit's fleet.

22. Aware that the disclosure of the purported default notices by Spirit's biggest aircraft lessor could lead to similar actions from other aircraft lessors, Spirit filed for chapter 11 bankruptcy later that same week on August 29, 2025. The Debtors continue to operate their business and manage their property as debtors-in-possession under sections 107(a) and 1108 of the Bankruptcy Code. These Chapter 11 Cases are jointly administered pursuant to Bankruptcy Rule 1015(b).

**The Debtors' Bankruptcy Proceeding**

23. Since initiating the Chapter 11 Cases, the Debtors have worked to negotiate agreements with their existing vendors and contractors, and secure adequate financing to continue Spirit's operations. As Spirit's current CEO and CFO, the Officer Defendants are substantially engaged in the day-to-day operations of Spirit's airline business and the efforts taking place to shepherd the Debtors through bankruptcy.

24. On October 10, 2025, the Court entered an interim DIP order authorizing the Debtors to obtain and guarantee the multi-draw senior secure DIP facility in the amount of up to $1.3 billion, inclusive of $475 million of new money loans. Upon entry of that interim order, $200 million was immediately available to the Debtors, with an additional $50 million available as a second draw on November 8, 2025.

25. Following entry of the interim DIP order, the Debtors worked diligently and in close collaboration with the committee, the DIP lenders, the RCF lenders, and other relevant stakeholders. Those negotiations were ultimately successful and resulted in an uncontested final DIP order on October 31, 2025. The final DIP order authorized the Debtors to borrow under a multiple draw senior secured DIP facility in the amount of up to $1.225 billion, again inclusive of $475 million of new money loans. The remaining $275 million (following the withdrawal of $200 million after the interim DIP order) was available to the Debtors in three subsequent draws, provided that the DIP's terms and conditions are satisfied. On December 15, 2025, the Debtors and DIP Lenders reached an agreement that will provide the Debtors access to a third round of funding. This funding, secured as a result of the Debtors' good faith and hard-fought negotiations with the various stakeholders, has enabled Spirit to continue operating while engaging in the restructuring process.

26. The Debtors have also worked diligently to preserve and negotiate agreements with certain aircraft lessors, existing vendors and contractors, and other commercial counterparties. For example, on December 23, 2025, the Bankruptcy Court entered an order approving a negotiated settlement between Spirit, International Aero Engines LLC, and International Aero Engines AG. On December 5, 2025, the Bankruptcy Court entered an order approving a negotiated settlement between Spirit and Carlyle Aviation Management Limited. On October 10, 2025, the Bankruptcy Court entered an order approving a negotiated settlement between Spirit and AerCap, Spirit's largest source of leased aircraft. Spirit has also rejected several aircraft leases and airport lease and use agreements, which no longer serve the Debtors' streamlined operations. Among other benefits, these agreements and rejections allow the Debtors to assume only those aircraft leases needed to power the Company's revitalized fleet, resolve costly and uncertain litigation claims

between the Debtors and their settling lessors, reduce operational and equipment costs, and receive significant liquidity infusions.

27. During the pendency of the Chapter 11 Cases, Spirit also negotiated new collective bargaining agreements (the "**New CBAs**") with its principal labor unions—those representing airplane pilots and flight attendants—that establish new labor conditions. On December 11, 2025, such agreements were ratified by Spirit pilots and flight attendants and approved by the Bankruptcy Court on December 29, 2025. The New CBAs are expected to provide Spirit with roughly $100 million in labor cost savings in 2026 and such similar cost savings in subsequent years.

28. Spirit's tireless efforts to obtain additional liquidity and maintain critical supplier relationships have allowed it to continue operating as a valued domestic airline while engaging in the restructuring process.

**The Securities Complaint**

29. On September 30, 2025, Defendants filed a putative federal class action complaint (the "**Securities Complaint**") against the Officer Defendants in the United States District Court for the Southern District of Florida, in an action captioned *Mleczko v. Davis*, No. 0:25-cv-61959 (S.D. Fla. 2025), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**").

30. Defendants bring their claims on behalf of a putative class consisting of all persons and entities, other than the Officer Defendants, that purchased or otherwise acquired Spirit securities between May 28, 2025 and August 29, 2025 (the "**Class Period**").

31. Defendants allege that the Officer Defendants made materially false and/or misleading statements regarding Spirit's business and operations. In particular, Defendants allege

that such statements failed to disclose that Spirit faced a substantial risk of being unable to meet its financial obligations and filing for chapter 11 protection.

32. Irrespective of the merits of the Securities Complaint, continued litigation by Defendants will deplete estate assets, misdirect management attention, and severely harm the Debtors' ability to continue to operate its business.

## CLAIMS FOR RELIEF

### COUNT ONE
**(Preliminary Injunction Staying the Securities Action)**

33. The Debtors repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

34. The Debtors seek a stay of the action captioned *Mleczko v. Davis*, Case No. 0:25-cv-61959, in the United States District Court for the Southern District of Florida, the Securities Action, under sections 362(a) and 105(a) of the Bankruptcy Code. This Court has the jurisdiction and authority to enjoin litigation of the Securities Action pursuant to section 105(a) because the actions will have a direct and substantial impact on the Debtors' estates.

35. Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). It is well settled that the Court, under section 105(a), may enjoin suits that might impede the reorganization process.

36. In assessing whether such a preliminary injunction under section 105(a) is appropriate, courts look to the traditional requirements for a preliminary injunction under Federal Rule of Civil Procedure 65, modified to fit the bankruptcy context: (1) whether there is a reasonable likelihood of successful reorganization; (2) whether there is imminent irreparable harm to the estate and the bankruptcy process in the absence of an injunction; (3) whether the balance

of harm tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction.

37. There is a reasonable likelihood that the Debtors will successfully reorganize. In the months since the Debtors commenced these Chapter 11 Cases, they have reached critical agreements with numerous aircraft lessors and other significant commercial counterparties, including with Spirit's largest source of leased aircraft. Among other things, these agreements allow Spirit to assume only those aircraft leases needed to power the Company's revitalized fleet, resolve costly and uncertain litigation claims between the Debtors and their settling lessors, reduce operational and equipment costs, and receive significant liquidity infusions. In addition, Spirit has reached beneficial agreements with its principal labor unions for pilots and flight attendants. And critically, the Debtors have obtained hundreds of millions of dollars in post-petition financing from their DIP Lenders, which provides the Debtors with needed liquidity to operate as a going concern.

38. Absent an order enjoining the Securities Action, the Debtors' estates and their reorganization efforts will suffer imminent irreparable harm. First, litigating the Securities Action will impede the Debtors' reorganization efforts by distracting Spirit's most senior officers, its CEO and CFO, from operating Spirit's airline business and focusing on the daily work needed to shepherd the Debtors through bankruptcy. Second, the Securities Action would have undeniable adverse economic consequences on the Debtors' estates because: (i) given that the allegations asserted in the Securities Complaint solely implicate actions taken on behalf of Spirit, the Debtors will be required to meaningfully participate in the Securities Action, at the expense of both time and cost to the Debtors' estates; and (ii) litigation of the Securities Action will trigger Spirit's indemnity obligations owed to the Officer Defendants.

39. The balance of harms weighs decidedly in favor of enjoining the Securities Action. The Securities Action threatens irreparable harm to the reorganization effort and estates, as described above, while the Defendants would suffer no real harm in temporarily staying litigation against the Debtors' principals. And finally, the public interest weighs heavily in favor of granting the requested stay. The requested stay would advance the prospects of a successful reorganization and allow the Debtors to emerge from bankruptcy and operate profitably with a revitalized aircraft fleet. Given Spirit's role as a leading value airline employing, as of the petition date, roughly 25,000 direct employees and independent contractors, and providing thousands of domestic consumers affordable travel options, the public interest favors facilitating the Debtors' successful emergence from bankruptcy.

40. An injunction staying the Securities Action against the Debtors is therefore appropriate.

41. No prior application for the relief requested herein has been made to this Court or any other court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs respectfully request that this Court enter judgment in their favor and request relief as follows:

(a) enjoin Defendants from continuation of the Securities Action, as well as the commencement or continuation of any other actions alleging substantially similar facts or causes of actions as those alleged in the Securities Action, if not otherwise subject to the automatic stay imposed by section 362 of the Bankruptcy Code;

(b) all such other relief as the Court finds just and equitable.

| | |
|---|---|
| Dated: January 12, 2026<br>New York, New York | Respectfully submitted,<br><br>*/s/ Ben Kaminetzky*<br>Ben Kaminetzky<br><br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Tel.: (212) 450-4000<br>Marshall S. Huebner<br>Ben Kaminetzky<br>Darren S. Klein<br>Christopher S. Robertson<br>Joseph W. Brown<br><br>*Attorneys for the Debtors and Debtors-in-Possession* |